SMITH ET, D. B. A. SMITH AND BOYLES, PLAINTIFFS, *v.* NOEL ET, DEFENDANTS.

Common Pleas Court, Scioto County.

No. 48134.  Decided January, 1963.

*Mr. Robert E. Dever* and *Mr. J. B. Marshall*, for plaintiffs.
*Mr. Raymond Switalski*, for defendants.

THOMPSON, J.   This case is now before this court on an application by plaintiffs for a temporary injunction *pendente lite.*

Plaintiffs are contractors engaged in construction work for the general public.  They are presently engaged in the construction of a building at the Northeast corner of Fourth and Gay Streets in the City of Portsmouth, Ohio.  On or about the 17th day of December, the defendants placed pickets in front of the construction job during the hours when plaintiffs' con-

struction was being performed. The wording of the signs carried by the pickets is not known, but plaintiffs allege that they were designed to convey to the public that the plaintiffs are unfair to labor.

It is agreed that defendants are not employees of plaintiffs and that they do not represent plaintiffs employees.

Plaintiffs therefore allege that no labor dispute exists between plaintiffs and their employees and that said picketing by defendants is, therefore, for an unlawful purpose and in violation of plaintiffs' constitutional rights and, therefore, seek an injunction.

The court declined to issue an injunction *pendente lite* without a hearing and at the hearing the defendants objected to the jurisdiction of the court to issue an injunction and maintained that plaintiffs were engaged in business affecting interstate commerce and that a labor dispute does exist and that, therefore, the matter was within the jurisdiction of the National Labor Relations Board under the provisions of the Labor Management Relations Act of 1947 as amended.

The court took the question of Jurisdiction under advisement and the parties have both submitted memorandums on this point.

Plaintiffs contend that they are not engaged in a business which is in interstate commerce or affects commerce and for that reason the Labor Management Relations Act does not apply, and that this court should follow the holding in the case of *Chucales* v. *Royalty*, 164 Ohio St., 214.

This case was decided by the Supreme Court of Ohio on October 25, 1955, and involved the picketing of plaintiff's restaurant by members of Local No. 429, Bartenders, Hotel and Restaurant Employees. Plaintiff's employees did not belong to this Union and the union did not represent them. The court held as follows:

Syllabus: (2)—"The public policy of Ohio, as determined by its courts, regards picketing against an employer as unlawful where there is no dispute between the employer and his employees and where the picketing is conducted by persons who were never employed by that employer and who do not represent anyone who ever was, and where it is conducted for the

purpose of pressuring the employer to compel his employees to join the union of those conducting the picketing."

Syllabus: (3)—"Where the public policy of a state regards such picketing as unlawful, a state court may enjoin such picketing, even though it is peaceful, without infringing the right of free speech guaranteed by the federal Constitution; and the fact that such public policy has been found by the courts of that state to be a part of its common law instead of being expressed by its Legislature in statutory form, is immaterial."

Syllabus: (4)—"The Fourteenth Amendment to the federal Constitution does not require a state to prohibit voluntary acquiescence in the demands of a union in order that such state may prohibit the union from exerting pressure by picketing to secure submission to such demands."

The last paragraph of the majority opinion of the *Chucales case* states that:

Since there is no claim that plaintiffs in the instant case were engaged in interstate commerce, the decisions in *Grimes & Hauer, Inc., v. Pollock, supra,* and *Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776, supra,* are not applicable.

We, therefore, see that this case did not involve the issue of interstate commerce and the court recognized that fact.

The case of *Grimes & Hauer, Inc. v. Pollock,* 163 Ohio St., 372, was decided by the Supreme Court on May 25, 1955, just five months prior to the *Chucales case.* This case did involve interstate commerce since the plaintiff was a Pennsylvania corporation authorized to do business in Ohio. Again, however, the picketing was by members of a union which did not represent plaintiff's employees and plaintiff's employees were not members of the Union. In this case as in the *Chucales case,* the picketing was at all times carried out in a quiet and orderly manner with no acts of violence or disorder. The holding of the court in this case is stated in the syllabus as follows:

1. "Because of the decision of the Supreme Court of the United States in the case of *Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776,* 346 U. S., 485, where a labor union is in dispute with an employer engaged in interstate commerce over the Unionization of the employer's nonunion em-

ployees, and the union pickets the business locations of such employer in an orderly and peaceful manner, a state court is without jurisdiction to enjoin the picketing; a controversy of this kind comes within the provisions of the Labor Management Relations Act (Section 151 et seq., Title 29, U. S. Code), as it relates to unfair labor practices; and the employer must, initially at least, pursue the remedy of presenting his grievance to the National Labor Relations Board."

From these two cases we see that the law of Ohio with respect to the jurisdiction of the state courts to issue an injunction when the picketing is peaceful, depends upon whether the plaintiff is engaged in business affecting commerce or engaged in interstate commerce. We are not concerned here with the jurisdiction of the state courts to issue an injunction where the picketing is disorderly, accompanied by violence, trespasses, or the picketing of private homes. In these cases the state courts probably still have the right to issue injunctions even though interstate commerce is effected. *Garner* v. *Teamsters*, 346 U. S., 485; *State, ex rel.* v. *Macelwane*, 116 Ohio App., 183, January 21, 1963, Ohio Bar.

The case of *Grimes & Hauer, Inc.* based upon *Garner* v. *Teamsters, etc.* settle, pretty definitely, that picketing by a Local Union of an employer's place of business, even though the employees of such employer are not members of the Union, constitutes unfair labor practice and comes under the provisions of the Labor Management Relations Act.

That only leaves for this court, one question to answer in determining whether or not it has jurisdiction to issue an injunction or whether or not the plaintiffs must first pursue their remedy with the National Labor Relations Board. That question is, "Is the plaintiff engaged in interstate commerce or in a business affecting commerce?" In answering this question, we must refer to the provisions of the Labor Management Relations Act of 1947 as amended.

Section 2 (6) and 2 (7) of the National Labor Relations Act provides as follows:

*Section 2 (6): Commerce.* "The term 'commerce' means trade, traffic, commerce, transportation or communication among the several States or between the District of Columbia

or any Territories of the United States and any State or other Territory or between any foreign country and any State, Territory or the District of Columbia or within the District of Columbia or any Territory or between points in the same State but through any other State or any Territory or the District of Columbia or any foreign country.''

*Section 2 (7): Affecting Commerce.* ''The term 'affecting commerce' means in commerce or burdening or obstructing commerce or the free flow of commerce, or having lead or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce.''

In those cases where the National Labor Relations Board has jurisdiction to act by reason of the fact that the business involved, is engaged in interstate commerce or affecting commerce, the National Labor Relations Board still has discretion to decline jurisdiction where the effect of such labor dispute on commerce is insubstantial. The Board's discretion is limited, however, in that the 1959 amendment provides that jurisdiction cannot be declined over a case which would have been accepted under the ''standards'' prevailing on August 1, 1959. (Sec. 14 [c] of 29 USC 164.)

The jurisdictional yardstick which prevailed on August 1, 1959, as established by the National Labor Relations Board with respect to Non-Retail Business was as follows:

''Jurisdiction will be asserted if the yearly outflow or inflow, direct or indirect, is $50,000.00 ............................ Direct and indirect inflow can be combined to meet the $50,000.00 requirement.'' *CCH Labor Law Reporter. Labor Relations,* Vol. 1, paragraph 1610.

Even before the 1959 amendment, some courts had held that the business of local contractors was within the jurisdiction of the National Labor Relations Board in view of the magnitude of the construction industry and of the use of out-of-state materials in such work. *Shore* v. *Building & Construction Trades Council of Pittsburg,* 173 F. (2d), 678.

See also the case of *Plumbers, Steamfitters, Refrigeration, Petroleum Fitters and Apprentices of Local 298* v. *County of Door,* decided by U. S. Supreme Court May 4, 1959. 359 U. S., 354, in which the headnotes read as follows:

1. "A labor dispute involving a building construction project whose total cost is about $450,000, roughly half of which is the cost of materials brought from outside the state in which the project is located, has a sufficient effect on commerce to be within the jurisdiction of the National Labor Relations Board."

2. "A state court must, in deference to the National Labor Relations Board, decline jurisdiction over an action to enjoin union picketing where the moving party's allegations regarding the union activity would, if proved, show the union guilty of unfair labor practices under the amended National Labor Relations Act, and, if such allegations were not proved, the union conduct might well be 'protected' under the act."

Holding also that the National Labor Relations Board has jurisdiction of a case involving a local contractor is *National Labor Relations Board* v. *Denver Building & Construction Trades Council*, decided by U. S. Supreme Court, June 4, 1951, 341 U. S., 675.

Since no evidence was heard at the hearing on the application for injunction *Pendente lite*, we have nothing before us at this time as to the exact amount of inflow direct and indirect of materials involved in plaintiffs' operation. We do have some statements in defendants' memorandum to the effect that the record of building permits issued during the period from February 2, 1962 to December 3, 1962, to plaintiffs, by the City of Portsmouth, indicates that plaintiffs engaged in construction in the City of Portsmouth during this period valued at $198,000.00, which is probably very conservative. While this is not evidence from which the court can make a final determination as to the amount of direct and indirect inflow of materials used by plaintiffs, it is sufficient to compel the court to decline to issue a temporary injuncton, since the presumption is great that plaintiffs' operation does come within the jurisdiction of the National Labor Relations Board under the jurisdictional yardstick established by it. The application for a temporary injunction is, therefore, denied.